218        NEW-YORK PRACTICE REPORTS.

Whitehead agt. The Buffalo and Lake Huron Railway Co.

# SUPREME COURT.

## JOSEPH WHITEHEAD agt. THE BUFFALO AND LAKE HURON RAILWAY COMPANY.

Section 427 of the Code reads in this way: "An action against a corporation created by, or under the laws of any other state, government or country, may be brought in the supreme court, the superior court of the city of New-York, or the court of common pleas for the city and county of New-York, in the following cases:

"1. By a resident of this state, for any cause of action.

"2. By a plaintiff not a resident of this state, when the cause of action shall have arisen, or the subject of the action shall be situated within this state."

The question is, where an *attachment* is issued against a foreign corporation upon their property here, by a *non-resident plaintiff*, in an action for alleged damages arising from a breach of contract made *out of this state*, the attachment can be sustained on the ground that "*the subject of the action*" is within this state?

*Held*, that "the subject of the action," in such case, is *the claim therein asserted* by the plaintiff, and the *satisfaction* of which he seeks out of the property. The *property* itself is not the subject of the action; the court, therefore, have no jurisdiction in such case. The attachment consequently discharged. (*This is a new and important question and decision.*—REP.)

*It seems*, that a statute of this state (*Session Laws of* 1858, *ch.* 121), which authorizes a railway company, created by the laws of and located in Canada, to take and hold real estate, for the purpose of making a railway in this state, and for that purpose makes applicable to it the sections of the general railroad act relating to acquiring title to real estate, and declaring it to be a *corporation* under the general railroad act, as if organized under the same, and to possess the privileges and franchises, and be subject to the duties as if organized under the same, if constitutional, does not give authority to proceed against said company only as against a *foreign corporation*.

*Erie General Term, November,* 1859.

*Present,* GREENE, *P. J.,* MARVIN, GROVER *and* DAVIS, *Justices.*

APPEAL from an order granting a motion to set aside an attachment granted against the defendant as a foreign corporation.

The defendant was incorporated by act of the Canadian Par-

liament, June 16th, 1856, and its two *termini* fixed by the act, viz. : Goderich and *Fort Erie.* At the time of incorporation all the corporators were foreigners, and at no time since has there been any officer, agent or managing power resident or citizen of this state, with the single exception of one director for a short time. By act of the New-York legislature (*Chap.* 360, *Laws of* 1847, *Vol. I of Laws, p.* 752), the defendants are authorized to take and hold real estate, for the purpose of making a railway from the river shore through the city of Buffalo, &c., and for that purpose the sections of the general railroad act relating to acquiring title to real estate are made applicable to this corporation. By act of the legislature of New-York, passed April 7th, 1858 (*Chap.* 121, *Laws of* 1858), "The Buffalo and Lake Huron Railway Company " is declared to be a corporation under the general railroad act, as if organized under the same and to possess the privileges and franchises, and be subject to the duties, as if organized under the same.

F. J. FITHIAN, *for plaintiff, argued,*

*First.* Assuming the defendant to be a foreign corporation, then the attachment should stand. The affidavit upon which it issues is sufficient. (*Code, section* 229; *Howard's N. Y. Code, p.* 344; *Morgan* agt. *Avery,* 7 *Barb.* 656; *Matter of Griswold,* 13 *Barb.* 412.)

The next question is, whether the defendant is a corporation created by and under "the laws of any other state or country," within the meaning of section 227 of the Code, and on that question we say—

*First.* It is submitted that this corporation is within the provisions of the Code, section 227, and subsequent sections; and that an attachment can issue against its property, even though the New-York act (*Laws* 1858, *chap.* 121) should have all the effect claimed for it by the defendant's counsel.

1st. The statute gives an attachment in all cases where the defendant in the action is "a corporation CREATED by or under the laws of any other state government or country." (*Code,*

**220** NEW-YORK PRACTICE REPORTS.

Whitehead agt. The Buffalo and Lake Huron Railway Co.

*section* 227.) This language, when read in connection with section 229 of the Code, must be considered as a definition of what is meant by the term "foreign corporation," as in the latter section.

2d. Conceding to the New-York act the effect claimed for it by the defendant's counsel, still the corporation is left within the plain letter of the statute authorizing an attachment. Conceding (at this point) that it is *possible* for the legislature to enact impossibilities, and give to this corporation some sort of a domicil or status in this state; still, is it not true, nevertheless, that this corporation was CREATED by the laws of Canada? If it existed at the time of the passage of the New-York act, by the same name, with the same privileges and franchises, and under the same officers and direction, and all this by the laws of Canada, has it ceased so to exist by any act of New-York? Will the counsel contend that the corporation is any the less a body "created" by the laws of Canada now, than it was when the New-York act was passed?

*Second.* But it is contended that the act of the New-York legislature (*Laws of* 1858, *chapter* 121) is absolutely null and void, and of no effect whatever.

1st. How is this act to be construed? If it be claimed that it was intended to have the effect of making this corporation a body corporate of the state of New-York, without destroying its identity as a corporation by the laws of Canada, and leaving it the same corporation there and here—then the legislature has undertaken a moral and physical *impossibility.* A corporation is a legal entity, a creature of *positive law.* It cannot migrate, and this because it is an artificial creature of the law of the place or government where it exists, and every hour of its existence is by force of that *law*, and when the corporators attempt to move themselves or it beyond the jurisdiction of the law and government under which they were created and exist, the privileges and franchises they hold under *that* law must FALL FROM THEM; and the converse of the proposition is equally true, that so long as a body corporate continues to have a legal existence and identity under the government and

laws of our country, that same body politic or corporate cannot by *possibility* have a legal existence and identity by virtue of the laws of any other government or country. It is as impossible as for the same man to exist in the United States and Canada at the same time, or that the same man should be twice born, or begotten by two fathers.

It is conceded that the legislature of this state may confer privileges and franchises upon a foreign *corporation*, but these are only privileges to the foreigner, and in no respect changes his character or identity. And should it be contended that *that* only is what was intended by the act, then I answer that there is no provision in the act exempting this foreign corporation from attachment.

2d. Will the counsel contend that, by virtue of his New-York act, he has got TWO corporations—one in Canada by the laws there, and one here by the laws of the state of New-York? This is equally impossible with the other. A corporation is one *personage* in *law:* it is indivisible; it is impossible that a set of corporators, with a corporate *name*, and with privileges, franchises, directors, officers and managers, should be *two* corporations, with the same *privileges, franchises, corporate name, officers and managers*, at the *same time*, and *in different places and jurisdiction.* This would be to endow them with ubiquity. The Siamese twins were closely connected, but one was "Chang" and the other was "Eng;" they were not both the same person. We accept the doctrine of "Trinity," by faith, agreeing at the same time that it is beyond the comprehension of finite reason, but we cannot be asked to accept the Lake Huron Railway by faith; it must stand in our courts, if at all, by law and reason.

3d. The act of New-York is impossible of execution in another respect. It provides that this corporation, naming it and recognizing its *previous existence* as a body corporate, shall be a corporation under our general railroad act, as if formed under that act, &c., and possess all the privileges, and be subject to all the liabilities granted and imposed by that act. Now it is impossible that the provisions of the general railroad act

should apply to this corporation. They are utterly inconsistent. The courts cannot execute the act. Every section would come in conflict with the rights of the corporators and corporation under the Canada *law.* How is the court to execute upon this company the provisions of our act as to the *stock* management of the road, elections of the officers, individual liability of the stockholders, lien of laborers, &c. ? It is impossible.

The next inquiry is, whether the plaintiff, who it is conceded is a non-resident of this state, is for that reason debarred from maintaining this action. It is conceded plaintiff is not a resident of this state. It is claimed defendant is a foreign corporation. It is admitted the " *cause of action* " did not arise in this state. It is shown by the papers that the defendant has *property* within this state. And it is insisted that *such property* is the *subject of the action* within the meaning of section 427 of the Code, sub. 2. The court below decided to the contrary, and on that ground set aside the attachment. We maintain the court erred,

1st. It is conceded that, at common law, no action lay in our courts against a foreign corporation, either in *personam* or in *rem.*

2d. The Revised Statutes (2 *R. S., part* 3, *chapter* 8, *title* 4, § 15) authorized an action or suit against a foreign corporation to be brought by *attachment,* in behalf of " a resident of this state." Of course such a suit was *necessarily* a proceeding in *rem* against the property. It could not be in *personam,* unless there was a voluntary appearance. And under this statute the writ of attachment was the *process* by which the suit was commenced.

3d. Then came the Code of 1848, providing for the commencement of all suits by summons, or summons and complaint, abolishing all writs or process whereby actions had been before commenced, and giving an order of attachment as a proceeding in the action, or a " provisional remedy," but containing no provision for actions against " foreign corporations.

Whitehead agt. The Buffalo and Lake Huron Railway Co.

4th. The Code, therefore, did in no respect change the *nature* of actions against "foreign corporations" from being suits in *rem*. (4 *How. P. R.* 276.)

5th. In 1849 (*Laws, chapter* 107, *p.* 142), the legislature en acted that suits might be commenced against *foreign* corporations, by "complaint and summons, together with an attachment as now provided by law," upon all contracts executed and delivered within this state, and for all causes of action arising within this state. This act was not limited to *residents* of this state.

6th. Then follows the Code of April 11th, 1849, with the 427th section as it now stands, giving an action against a foreign corporation by a *resident* of the state, for "any cause of action." And by a *non-resident* when the "*cause* of action shall have arisen, or the subject of the action be *situated* within this state."

We maintain, therefore, that in all actions against *foreign* corporations, when the object and purpose of the action is to enforce payment of a debt or demand out of the property of such corporation in this state, by virtue of attachment and judgment, the *subject* of the action is the *property* sought to be *sequestered*.

1st. It is decided by every court which has spoken on the subject, that such an action is a proceeding in *rem*, and not in *personam*. (4 *How. P. R.* 275 ; 13 *How.* 516; 5 *How.* 183.)

This proposition is fully conceded by the judge at special term.

2d. This last proposition ought to be decisive of the case. If it *be* a proceeding in *rem*, what other *subject* can there be for the suit to affect but the *property ?*

3d. The learned judge, at special term, holds that the subject of the action is the *claim* asserted by plaintiff, and "the satisfaction of which he seeks out of the property attached which he concedes to belong to defendant." With respect it is submitted, this is confounding the "subject" with the "cause" of action. Every action may be said to have three elements. The *cause*—the *object* and *purpose*—and the *subject.* Express

mention is made of *two* of these elements in the section of the Code under consideration. In this case, what is plaintiff's *cause* of action? What brings him into court? It is that there is a contract and a breach, for which plaintiff claims compensation in damages. If the word "claim" be used in the sense of the plaintiff's demand, as it sometimes is, then it is equivalent to the "cause of action," or the contract and breach. If it be meant to signify by it merely the prayer for relief, or the asking the aid of the court, then it has no legal signification whatever in the question at issue. But in no sense can it be said to be the "subject of the action." The cause of action and claim exists, and belongs to the plaintiff before any suit, and without any interference by the court. It is *that* which sets the court in motion. The "object" of the proceedings in court—the end sought to be obtained is to *subject* the *person* or *property* or both, of the defendant, to answer plaintiff's claim. The "subject" *upon* which the court acts is the person or *property* of the defendant. In this case it is not the *person* of the defendant. That is beyond the reach of the court, and cannot be brought within its jurisdiction, unless by voluntary appearance. But the *property* of the defendant *is* within the power of the court, and is the only matter or thing which *can* be *subjected* to the plaintiff's claim. If this was an action of *replevin* for personal property, or *ejectment* for real estate, can there be a doubt that the property sought to be reached would be the "subject of the action?" Yet in both such cases personal judgment could be rendered against the defendant. Certainly, then, in a proceeding *wholly* in *rem*, what can be the subject of the action but the *rem?* (*Ready* agt. *Stewart*, 1 *Code R. N. S.* 298.)

4th. The foregoing is sustained by authority. One of the definitions of the word "subject" is "to cause to undergo, as to subject a substance to a white heat," &c., so the "subject" is that on which any "mental" or "physical" operation is performed. In logic it is that concerning which anything is affirmed or denied. (*Webster's Dictionary*.)

So in the case of *Clark* agt. *The New-Jersey Steam Naviga-*

*tion Co.* (1 *Story's Circuit Court Reports*, 531). This was a libel filed in the district court of Rhode Island, and an attachment issued thereon against the property of defendants in that *district.* Plea that defendants were a corporation of *New-Jersey*, and that they could not be sued or their property attached in the courts of any other district or state. Judge STORY decided that although an action in *personam* could not be sustained against a foreign corporation (unless it voluntarily appear), yet as to property of such corporation within the jurisdiction, an action would lie to reach it, in which case the proceeding was in *rem*, and the property the subject of the action.

It is claimed *Ready* agt. *Stewart* (1 *Code, R. N. S.* 297) is in point for us. It was there held, where *both* parties were *residents* of *Maryland*, and the causes of *action arose* there, that the plaintiff could maintain an action against the defendant here by an attachment of his property here. And that because —although the court got no jurisdiction of the *person* of the *defendant*, it had jurisdiction over all *property* in this state— and in such cases, the *property* and not the *person* was the subject matter of the action. The language of the judge is too plain to be mistaken on this point. So in *Brewster* agt. *Michigan Central Railroad Company* (5 *Howard*, 183), the court set aside a personal judgment against a foreign corporation, by service upon an agent in this state. WELLES, J., says, " The extent of power of the court over a foreign corporation, where there has not been a voluntary appearance in the action, is to *subject* the property and effects of such corporation within this state to the payment of its debts, by a judgment in *rem* as to such property and effects after the same has been attached," &c. If the purpose and the *power* of the court is solely to " subject" property, what can be the " subject of the action " but the property sought to be subjected?

Again, the alterations which have been made in sections 113 and 114 of the Code of 1848 (now sections 134 and 135) should have much weight in giving a construction to section 427. The first Code of 1848 contained no provision whatever for suing

a foreign corporation, or for publication of a summons in *such case*. (*See sections* 113, 114.) Then came the Code of 1849, adding section 427—changing sections 113 and 114 to 134 and 135, and amending section 135, so that service of summons might be made by publication in cases "*where the defendant is a foreign corporation*." Then came the decision of SILL, J., in *4th Howard P. R.* 276, holding that service of summons upon an agent of a *foreign* corporation here was of no effect, and that no judgment in *personam* could be obtained against a foreign corporation without a voluntary appearance. Of course, under such an adjudication, the provisions for making service of a summons by publication, upon a foreign corporation, was of no avail. But in order that the proceeding in *rem* against the property of the corporation might not fail for want of some way to serve a summons (which was the only way provided for commencing any action whatever), the amendments of 1851 provided for service in *such case only* on a foreign corporation. To the first subdivision of section 134 they added the words, "*but such service can be made in respect to a foreign corporation only when it has property within this state, or the cause of action arose therein;*" and to the first subdivision of section 135 they added these words, "*and has property within this state, or the cause of action arose therein;*" thus providing for the commencement of actions in the two cases mentioned in subdivision 2 of section 427, and showing conclusively that the legislature which made these amendments understood the term, "*subject of the action shall be situated within this state,*" as used in section 427, to mean precisely the same as the words, "*property within this state,*" used in sections 134 and 135.

The learned judge, at special term, answers this by saying that, "this construction would create a direct repugnancy between the sections in question." With respect, we submit the "repugnancy" is created by the construction which the *court* gives to section 427. Let that section have the construction we contend for, and there is no repugnancy, but all the sections would harmonize, not only with each other, but with the manifest understanding of the legislature.

The case of *Bank of Commerce* agt. *The Rutland, &c., Railroad* (10 *How. P. R.* 1) is no authority against us. That case turned upon the other clause of section 427, and the question was, whether the *cause of action* did or did not arise within this state; and the suit being upon a bill of exchange *payable here*, the court held, that the cause of action arose here, and for that reason held the proceedings valid. It is true that Justice HAND did remark, in passing, that the property was *not* the subject of the suit. But that point was not up at all, or discused by counsel. The remark was *dictum*—unnecessary for the decision of the case, and it is clear the judge had given it no examination; for in the same sentence he uses the words, " subject *matter* of the action," thus interpolating a word not in the statute, and which gives to the word "subject" a much broader signification than it would have without such word.

To the point, that a suit against a foreign corporation, and an attachment against its property, is a proceeding in *rem.* (*See* 13 *Howard's Practice Rep.* 516, *and all other authorities therein cited.*)

*Lastly.* If it be claimed that the act of the New-York legislature (*chapter* 121, *Laws* 1858) had the effect to create or organize a new corporation within this state, then we contend it is in conflict with the constitution, and void.

Section 1st, article 8th, of the constitution, provides that " corporations shall *not* be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the object of the corporation cannot be obtained under general laws."

1st. This is a special act

2d. It is not a municipal corporation.

3d. The object to be attained by this corporation is to construct, own and operate a railroad, and hold sufficient real and personal property for that purpose.

4th. That these objects can be obtained by general laws, has been adjudged by the legislature by at least a dozen acts; and the same thing was fully adjudged by the act in question,

·by its attempts to make this a corporation under the general act.

WM. W. MANN, *for defendants, argued,*

I. The order discharging the order of attachment in this action should be sustained, because:

1. The defendant is a corporation under the laws of the state of New-York, to authorize the formation of railroad companies and regulate the same, passed April 2d, 1850. (*Vide Session Laws* 1858, *chapter* 121, *p.* 226.)

2. The act of 1858, declaring the defendant a corporation under the general railroad law of 1850, is valid, and not a violation of the first section of article 8th of the constitution of the state of·New-York. (*Morris* agt. *The People*, 3d *Denio*, 382, *opinion, p.* 394; *Suydam* agt. *Moore,* 8 *Barb. S. C. Rep.* 358, *opinion,* 364; *Syracuse City Bank* agt. *Davis*, 16 *Barb. S. C.* 188 *and* 193; 15 *do.* 657–663.)

I. If, in the opinion of the court, the defendant is a foreign corporation and liable to attachment, then we say the plaintiff has not made out a case.

By section 229 of the Code, an attachment may issue in favor of any person, when it shall appear that the defendant is a foreign corporation, and that a cause of action exists.

By the affidavit upon which the order of attachment was made, it does not appear that a cause of action in favor of plaintiff against defendant exists. The plaintiff swears defendant is indebted to him for work, &c., $160,000. It does not appear that the debt, if any, was due or. when it became due. It specified the amount of·the claim, but does not specify the grounds of the claim.

II. Section 427 of the Code, relative to actions against foreign corporations, provides that actions may be maintained:

1st. By a resident of the state, for any cause of action.

2d. By a plaintiff not resident when the cause of action shall have arisen in this state, or the subject of the action shall be situated within the state.

The affidavit upon which the order of attachment was made

Whitehead agt. The Buffalo and Lake Huron Railway·Co.

is defective, in that it shows the defendant to be a foreign cor-
poration, but does not show that the plaintiff is a resident of
this state, or that the cause of action arose here, or the subject
of the action is situated here.

The remedy by attachment under the Code is a provisional
one, and, unless the plaintiff can maintain his action, no attach-
ment can issue or be maintained.

The defendant's affidavits show, that the plaintiff is a non-
resident, and that the cause of action, if any, arose in
Canada.

By the court—GREENE, P. J. The only question, which I
deem it necessary to decide on this motion is, whether, conced-
ing the defendant to be a foreign corporation, it is liable to
be sued, or rather to be proceeded against under our statutes,
which provide for the *appropriation by judicial proceedings of
the property* of such corporations situated in this state, to the
payment of their debts. There are a few elementary proposi-
tions material in the consideration of this question, which need
only to be stated.

*First.* No valid judgment *in personam*, or which, *proprio
vigore*, creates or declares an obligation to pay money or per-
form any legal obligation, can be pronounced by any judicial
tribunal, until it has first obtained jurisdiction over the party
against whom the judgment is pronounced by the ordinary
process of the common law, or in the equivalent language of
our state and federal constitutions, "*by due process of law.*"

*Second.* A corporation can have no local habitation beyond
the territorial bounds of the government, by whose laws it was
created, and hence no jurisdiction *in invitum* of it, a *quasi cor-
poration*, can be obtained in a country, subject to any other
government. But,

*Thirdly.* All property within the jurisdiction of any gov-
ernment is necessarily subject to the control of its laws, and
may rightfully be appropriated by those laws to the payment
of the debts of its owner, at such times and upon such condi-
tions as may, by such government, in the exercise of a reason-

able discretion, be deemed just.   And as this right, as well as the manner of exercising it, depends upon the laws of the country where the property is situated, it must be exercised in all respects in subjection to those laws.   The true points of inquiry, therefore, are : to what extent do the laws of this state subject foreign corporations to proceedings in its courts for that purpose, and by whom and for what causes may such proceedings be instituted ?

· Prior to the adoption of the Code, the Revised Statutes provided that suits brought in the supreme court, by a resident of this state, against any corporation created by the laws of any other state, &c., for the recovery of any debt or damages, might be commenced by attachment.   (2 *R. S.* 457, 157.)   Until the enactment of this statute, it seems to have been conceded, that under our laws no proceedings could be taken against foreign corporations, except in cases where they appeared voluntarily, or in other words, that our courts had no common law jurisdiction over such corporations, and could acquire none without their consent.   (*See opinion of* SILL, J., *in Hulbert* agt. *The Hope Mutual Ins. Co.*, 4 *How. P. R.* 276 ; *Matter of McQueen and others* agt. *The Middletown Manufacturing Co.*, 16 *John. R.* 5, *and* 1 *R. S., p.* 163, § 23, § 21, *p.* 162, *and* § 1, *p.* 157.)   In the case last cited, it was held, that the provisions of the act under which the case arose applied to *natural persons* only. (*Opinion of* SPENCER, J., *pages* 6 *and* 7.)   The Code as first enacted (*Laws of* 1848, *chap.* 379, *p.* 497) contained no provision for the commencement of " actions " against foreign corporations.   By an act passed March 15th, 1849 (*Laws, ch.* 107, *p.* 142), the 15th section of the Revised Statutes, above cited, was amended, so as to provide that *suits* might be brought in the supreme court and court of common pleas, in the city of New-York, against any corporation created by the laws of any other state, &c., for the recovery of any debt, &c., arising upon contract made, executed and delivered within this state, or upon any cause of action arising therein, that such suits might be commenced by complaint and summons, together with an attachment as then provided by law, and that such

Whitehead agt. The Buffalo and Lake Huron Railway Co.

complaint and summons might be served in the manner provided by sections 113 and 114 of the Code of Procedure. By a subsequent act passed April 11th, 1849 (*Laws, chap.* 438, *p.* 613), the Code was revised and amended, "so as to read," as provided by the latter act. By this act, several new sections were added to the Code, among them were sections 227 to 243 inclusive, and section 427. By the latter section it was provided that an action against a corporation created by the laws of any other state, &c., might be brought in the supreme court, the superior court, or court of common pleas of the city of New-York, in the following cases:

1st. By a resident of the state, "*for any cause of action.*"

2d. By a plaintiff not a resident of this state, when the cause of action shall have arisen, *or the subject of the action shall be situated within this state.*

This section has remained unchanged until the present time. Section 227 provided that, in an action for the recovery of money, an attachment might be issued as a security for the satisfaction of such judgment as the plaintiff might recover, among other cases, where the action was against a corporation created by the laws of any other state, &c.

The following sections to 243, inclusive, prescribe the proceedings upon such attachment. These sections, with the exception of certain amendments to sections 227, 229 and 241, which in no way affect the question under consideration, remain as they were originally enacted. Sections 134 and 135, in the act of 1849, which are substituted for sections 113 and 114, in the Code of 1848, and which contain amendments, which need not be here noticed, prescribe the manner of serving the summons in all cases.

By act passed July 10th, 1851 (*Session Laws of* 1851), the Code was again amended. By that act sections 134 and 135 were amended in the following particulars, supposed to be material to the question under consideration:

By the first subdivision of section 134 of the Code, as amended in 1849, as by the same subdivision of the corre-

232

NEW-YORK PRACTICE REPORTS.

Whitehead agt. The Buffalo and Lake Huron Railway Co.

sponding section (113) of the Code of 1848, it was provided that if the suit was against "*a corporation*," the summons should be served by delivering a copy thereof to the president or other head of the corporation, secretary, cashier or managing agent thereof. By the amendment of 1851, the following clause was added to the first subdivision of section 134:

"But such service can be made in respect to a *foreign corporation* only, when it has property within this state, or the cause of action arose therein."

Section 135 of the Code, as amended in 1849, provided, that when the person, upon whom the service was to be made, could not be found in the state, the court or a judge might grant an order, that the service be made by the publication of the summons among other cases, "when the defendant is a foreign corporation." By the amendment of 1851, it was provided that service by publication might be made "when the defendant is a foreign corporation, and has property within the state, or the cause of action arose therein."

It is conceded that this action is not brought "by a resident of this state, nor upon a contract made, executed or delivered within this state."

It follows, therefore, that neither the provisions of the Revised Statutes above cited (2 *R. S.* 459, § 15), nor the amendment of that section adopted in 1849 (*Laws of* 1849, *ch.* 107, *p.* 142), have any application to this case, and if this proceeding can be sustained at all, the authority for it must be found in the provisions of the Code. The provisions of section 427 have been quoted, and they seem to me decisive of this question. That the courts of this state have no common law jurisdiction over or power to render judgments in *personam* against foreign corporations is clear, both upon principle and authority. (*See the cases above cited, and Brewster* agt. *The Michigan Central Railroad Co.*, 5 *How. P. R.* 183.) The proceeding against a foreign corporation, though termed an "action" against it, is merely a proceeding in *rem*, or a *quasi* proceeding in *rem*, the object and sole effect of which are to appropriate its property, within the jurisdiction of the court, to the payment of the

debts of the corporation. That proceeding can be instituted only by the persons and for the causes prescribed by the statutes of the state. (*Case* agt. *Ohio Insurance Co.*, 2 *C. R.* 82.) The section last cited provides that this proceeding or "action" may be instituted by a resident of this state, for any cause of action, and by a plaintiff not a resident, when the cause of action *shall have arisen, or the subject of the action* shall be situated within this state. We have seen that the plaintiff is not "a resident of this state." It is admitted by the affidavits on both sides, that the contract, upon which the action is brought, was executed, and that the breach of it, for which the damages are claimed, took place in Canada. There can, therefore, be no pretence that the cause of action "arose in this state." I think it is equally clear that "the subject of the action" was not situated within this state. What is the subject of the action? Not certainly the title to the property attached, for the plaintiff asserts no such title here; he claims the right to have that property appropriated to the payment of an alleged debt due to him from the defendant. But this right is neither questioned nor questionable, if his right to maintain this proceding is conceded. The subject of the action is the *claim therein asserted* by him, and the satisfaction of which he seeks out of the property attached, which he concedes to belong to the defendant. (*See the opinion of* HAND, J., *in the case of The Bank of Commerce* agt. *The Rutland and Washington Railroad Co.*, 10 *How. P. R.* 8.) On the argument, the plaintiff referred to the case of *Ready* agt. *Stewart* (1 *C. R. N. S.* 298), as sustaining the position in question.

But I do not so understand the opinion of the learned judge who delivered the opinion in that case. He says the term, "subject of the action," relates to the nature of the action, or the "*thing*" sought to be obtained by the judgment to be given, but not at all to the "*person of the defendant.*" The learned judge was commenting upon the 3d subdivision of section 135 of the Code, which requires that, in the case of a non-resident defendant, who has property in the state, and the action arises on contract, the court should have juris-

diction of the *subject* of the action. Now, the thing sought to be obtained by the judgment was, the establishment of the claim asserted in the action. The idea that the learned judge was combatting was, as I understand his language, simply that the term, "jurisdiction of the subject of the action," did not mean jurisdiction of the defendant.

It was also urged on the argument, on the authority, I suppose, of a suggestion of Justice HAND, in the case above cited, that the amendment of sections 134 and 135, limiting the service of summons, as in those sections prescribed, to cases where the cause of action arose in the state, or the defendant had property therein, is to be construed as modifying section 427, so as to make a foreign corporation liable to an action, whenever it has property in the state. This construction would create a direct repugnancy between the sections in question. This consequence should, and I think may be avoided by limiting the provisions of each section to the apparent object of the section. Section 427 specified the cases in which actions might be brought against foreign corporations, and sections 134 and 135 prescribed the manner of serving the summons in certain classes of cases, without regard to the right to maintain the action in any particular case. The object of these sections, I apprehend, was to provide for a service in all cases, where, assuming the right to institute an action, such service would be of any utility to the party ; and while it may be difficult in all cases, and especially in cases like that now under consideration, to perceive a perfect adaptation of all the provisions of these sections to this object, I think it would be still more difficult to give them the effect of enlarging the provisions of another section in which the right to maintain this class of actions is plainly defined, and as plainly limited. In short, the authority to maintain these actions is given by section 427, and the practice in them, so far as the service of the summons is concerned, is regulated by sections 134 and 135, and this, I think, is the only effect of these sections in such cases.

It is settled by well-considered authorities, that proof of

jurisdictional facts is not essential to establish the regularity of the service of a summons upon a foreign corporation. The attachment may be issued at the time of issuing the summons, or " *at any time afterwards.*" (*Hulbert* agt. *The Hope Mutual Insurance Company, above cited,* and *Bates* agt. *The New-Orleans, Jackson and Great Nerthern Railroad Co., 13 H. P. R.* 516.) The corporations proceeded against by summons before the issuing of an attachment may, on motion, contest these facts, and the plaintiff may, on a motion to set aside the service of the summons, produce the proof necessary to show his right to proceed against the corporation and thus sustain his proceedings. (*Cases above cited.*)

It is not until the plaintiff procures his attachment, which is to operate upon the property of the corporation, and which effects and eventually consummates the whole object of the proceeding, that the plaintiff is bound to prove the acts upon which jurisdiction to entertain the proceedings depends.

As the plaintiff in this case was not a resident of the state, and as the cause of action did not arise, and the subject of it is not situated within this state, it follows that the court has no jurisdiction of the proceeding.

And the order to discharge the attachment must be affirmed with $10 costs.

MARVIN, GROVER and DAVIS, Justices, concurring.